The FIRST NATIONAL BANK, PERRYTON, TEXAS, a corporation,
Appellant,

v.

L. E. McCLUNG and Catherine McClung,
Appellees.

No. 8233.

Court of Civil Appeals of Texas,
Amarillo.

July 31, 1972.

Rehearing Denied Aug. 28, 1972.

Lemon, Close, Atkinson & Shearer, Otis C. Shearer, Perryton, for appellant.

Fike & Hunter, William Hunter, Dalhart, for appellees.

JOY, Justice.

This is a summary judgment case wherein plaintiff has appealed from the judgment for defendants. Affirmed.

The parties are referred to here as they appeared in the trial court. Defendants owned 640 acres of farm land located near Dalhart, Texas, upon 440 acres of which a first lien existed in favor of American Trust Life Insurance Company. Defendants further were indebted to the plaintiff in an amount not shown by the record secured by a second lien and deed of trust. Defendants defaulted and became delinquent on the first lien note to American Trust, and foreclosure was threatened as of November 5, 1968. On November 2, 1968, defendants contacted plaintiff in reference to a loan to pay the delinquent amount owed by them to American Trust in the amount of $3,080.95. The plaintiff bank was unwilling to loan defendants the monies needed without an agreement by defendants to sell the land for an amount anticipated to be sufficient to pay off the American Trust indebtedness as well as the plaintiff's second lien indebtedness. The letter agreement is hereinafter set forth in full:

"November 2, 1968

"The First National Bank

"Perryton, Texas

"Re: Section 12, Block 47½ H&TC Ry. Co. Survey, Dallam County, Texas.

"Gentlemen:

"All of the captioned property except the West 200 acres of the North Half will be sold at foreclosure sale at the Courthouse in Dallam County, Texas, on Tuesday, November 5, 1968, unless your bank provides funds to prevent such sale. In consideration of the advancement of your bank of the sum of $3,080.95 we agree as follows:

"(1) That unless we are able to sell the South Half and the Northeast Quarter of said section on or before Sunday, November 24, 1968, for at least enough to pay off the liens now on our land, and in addition to pay our cattle indebtedness in the sum of $10,643.41, we will offer such land for sale on December 14, 1968, in accordance with the following provisions:

"(a) We shall offer the surface and one-half (½) of the minerals for sale.

"(b) We authorize the commencement of advertising of such sale on Thanksgiving day and on each Sunday thereafter in such newspapers as we shall mutually agree on.

"(c) We shall offer such land with the understanding that possession will be delivered immediately, that the purchaser will have no longer than thirty (30) days in which to examine abstracts of title; that the purchaser will put ten (10%) percent of the selling price in escrow with you as escrow agent; that we shall furnish certificates showing payment of all ad valorem taxes for 1968 and prior years. The land shall also be offered subject to existing easements if any.

"(2) The ~~consideration~~ contract of sale shall specify that it shall be closed either at your bank, or at such other place designated by you in Perryton, Texas.

"The agreements set forth above are made with the express understanding that your bank will make the necessary arrangements with the American Trust Life Insurance Company so that there will be no foreclosure sale on Tuesday, November 5, 1968.

"Very truly yours,

"/s/ L. E. McClung

"/s/ Catherine McClung

"ACCEPTED AND APPROVED BY:

"THE FIRST NATIONAL BANK, PERRYTON, TEXAS

"By ./s/ R. H. Holland

"R. H. Holland, Executive Vice-President"

The defendants had previously listed the entire 640 acres for sale with a real estate broker but had been unsuccessful in securing a purchaser. Subsequent to the execution of the letter agreement the plaintiff, with defendants' consent, advertised the entire 640 acres for sale with the stipulation in each ad that the seller reserved the right to reject any and all bids. A price agreeable to defendants could not be secured, and the bid or bids made in response to the advertising were rejected by defendants. At some later date not disclosed by the record, the first lien holder foreclosed under the terms of its deed of trust and plaintiff bank foreclosed its second lien, purchased the 440 acres, paid off the first lien and applied the excess proceeds to the bank's second lien indebtedness, leaving an unpaid balance due plaintiff by defendants in the sum of $21,897.44 plus interest. The plaintiff then brought this action upon the letter agreement to require the defendants to sell the remaining 200 acres claimed by defendants as homestead. The defendants answered contending that the 200 acres were exempt from the sale under the Constitution of the State of Texas. Defendants' motion for summary judgment was granted upon the stated ground that no genuine issue of any material fact existed.

The plaintiff is here on a single point of error that "the trial court materially erred in granting the appellees' motion for summary judgment." The plaintiff recognizes in both its pleadings and affidavit that defendants claimed the 200 acres as their homestead. Plaintiff contends that even if the letter agreement is uncertain as to whether defendants agreed to sell the 440 acres or the total 640 acres, defendants verbally agreed to sell the total tract. Even assuming that the letter agreement is not limited to that portion of 440 acres, we are of the opinion that after a careful review of the entire record before us that the plaintiff, by entering into the agreement and advancing additional monies is, in effect, attempting to enforce indirectly a lien against the homestead which is forbidden by Article 16, § 50 of the Texas Constitution, Vernon's Ann.St. By the terms of the letter agreement, the bank was not the purchaser of the homestead, but obviously attempted to secure amounts of money advanced to defendant both prior to the letter agreement and at the time of and in consideration for the execution thereof. The substance of the contract or letter agreement as opposed to the form reflects nothing more than an attempt to enforce a lien and forced sale upon the homestead. The agreed purpose of the advancement of the additional monies to prevent the foreclosure by American Trust upon its first lien is not for any of the purposes provided by the Constitution. See Toler v. Fertitta, 67 S.W.2d 229 (Tex.Com.App. 1934).

Plaintiff urges McDaniel v. Newton, 187 S.W.2d 139 (Tex.Civ.App.—Fort Worth 1945, writ ref'd w. o. m.) as authority that specific performance will lie against the homestead when the contract has been fully performed. In the McDaniel case no contract or agreement to convey was involved but a fully executed conveyance with the complete consideration having been paid. Therefore, the case is not in point.

The judgment of the trial court is affirmed.

REYNOLDS, Justice (concurring).

I concur in the affirmance of the trial court's summary judgment, but on a basis different from the one upon which the majority opinion is predicated. I would affirm the summary judgment for the reason that the letter agreement relied upon by plaintiff is too indefinite and uncertain to authorize the specific performance plaintiff seeks.

As a prelude to specificity why the letter agreement will not support specific performance, certain procedural complaints must be resolved. After the pleadings were cast by which plaintiff sought specific performance under the letter agreement and defendants denied, for various asserted reasons, that plaintiff had pleaded a cause of action, defendants filed an unverified motion for summary judgment unaccompanied by summary judgment evidence. Plaintiff filed a controverting affidavit executed by its executive vice president during the times material. The affidavit set forth the negotiations leading to the letter agreement and the actions taken as a result thereof, but other than stating the agreement was to sell all of the section if necessary to pay the indebtednesses, the affidavit does not vary, but confirms, the agreement as expressed in the letter. The trial court, finding there was no genuine issue as to any material fact, granted defendants' motion and entered summary judgment for defendants.

Plaintiff reached this court on the one point of error that the trial court materially erred in granting the motion for summary judgment, asserting and arguing thereunder several reasons why defendants were not entitled to the judgment rendered, and defendants objected that the point is too general to be considered. The point of error, serving as an umbrella under which may be raised all grounds upon which it is contended that the summary judgment should have been denied, has been approved by our Supreme Court. Malooly Brothers, Inc. v. Napier, 461 S.W.2d 119 (Tex. Sup.1970). Under its point of error plaintiff generally complains in several particulars that defendants did not discharge their burden of proof to demonstrate that there are no material issues of fact, particularly since the unsworn motion for summary judgment, unaccompanied by summary judgment proof, of necessity was based on the unsworn pleadings, and the pleadings, sworn or unsworn, are not summary judgment evidence. Without listing the cases plaintiff relies upon, suffice it to state that those cases reiterate the rules that the movant has the burden to show by summary judgment evidence the absence of genuine issues of material fact, and that pleadings, even sworn to, may not be considered summary judgment proof in favor of the movant for summary judgment; however, summary judgment procedure is proper, and summary judgment may be rendered thereunder, for defendant when the plaintiff's petition fails to state a legal claim or cause of action, because the summary judgment does not rest on proof supplied by pleadings, but on deficiencies in the opposing pleading. See Hidalgo v. Surety Savings and Loan Association, 462 S.W.2d 540, note 1 at p. 543 (Tex.Sup.1971); University of Texas: McDonald, Summary Judgments, 30 Tex.L.Rev. 285 (1952) at page 297; University of Texas: Suggs v. Stumberg, Summary Judgment Procedure, 22 Tex.L. Rev. 433 (1944) at page 438.

Thus, in this instance, plaintiff's petition must be perused to determine if it states a legal claim or a cause of action and, in testing the propriety of the summary judgment in favor of defendants, every allegation in plaintiff's petition must be taken as true to determine if it states a cause of action. General Plywood Corporation v. Collins, 414 S.W.2d 224 (Tex.Civ.App.— Amarillo 1967, no writ); Labbe v. Carr, 369 S.W.2d 952 (Tex.Civ.App.—San Antonio 1963, writ ref'd n. r. e.). Plaintiff's pleadings sets forth the letter agreement copied in the court's majority opinion and alleges that it is entitled to specific performance of the agreement. Taking plaintiff's allegations as true, the agreement is fatally deficient to support the plea of specific performance in that there is absent the essential elements of the amount of the selling price and the terms thereof for and under which the defendants would be bound to sell the land. While the agreement does propose to offer for sale the land referred to, provided the south one-half and the northeast one-quarter of the section was not sold for at least enough to discharge the liens then existing against the land and to pay the cattle indebtedness, the agree-

ment does not specify a price for which the land must be sold. Plaintiff pleaded that there was no "minimum bid understanding" as between plaintiff and defendants other than the property must bring enough to pay plaintiff in full. This allegation does not establish the missing essential element of the sale price, but, on the contrary, is an admission that no sale price was agreed upon. The fact that the land was advertised for sale for cash, with defendants having the right to refuse all bids, supports the conclusion that no agreement was reached as to the sale price. Plaintiff makes no complaint of a failure to allow it an opportunity to prove any other details of the agreement; it is plaintiff's position that it was entitled to recover specific performance of the agreement as pleaded.

For a court to be authorized to decree specific performance of an agreement, the agreement must contain the essential terms of the contract, expressed with such certainty and clarity that the duty of each party to perform and the conditions under which performance is due can be ascertained and decreed. The court cannot and may not by mere guess, surmise or conjecture supply the essential missing elements of an agreement so as to compel specific performance, because it might erroneously decree something that the parties never intended. See Bryant v. Clark, 163 Tex. 596, 358 S.W.2d 614 (1962); Botello v. Misener-Collins Company, 469 S.W.2d 793 (Tex. Sup.1971).

Were the court to attempt to decree specific performance in this instance, the court would be required to set a selling price and determine the terms of the consideration, whether cash or part cash sufficient to discharge plaintiff's claim and part deferred, and, if deferred, the rate of interest on the deferred portion, together with the manner of payment of the deferred principal and interest. None of these vital matters are embraced within the agreement and, under the law of this state, these essential features may not be supplied by the court so as to decree specific performance. Without

an agreement as to the selling price and the terms, if any, there is no agreement enforceable by decreeing specific performance; consequently, plaintiff's petition is deficient in that it fails to state a legal claim or cause of action against defendants, and summary judgment for defendants was proper.

For the reasons stated, I concur in the affirmance of the trial court's summary judgment.